**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JULIAN DALE KEY

      Petitioner,                   CASE NO. 5:07-CV-11507

v.                            HONORABLE JOHN CORBETT O'MEARA
                                    UNITED STATES DISTRICT JUDGE

SHERRY BURT,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE
## PETITION FOR WRIT OF HABEAS CORPUS

Julian Dale Key, ("Petitioner"), presently confined at the Straits Correctional

Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  In his *pro se* application, Petitioner challenges his conviction for first-

degree murder, M.C.L.A. 750.316.  For the reasons stated below, the application for writ

of habeas corpus is **DENIED.**

## I.  Background

Petitioner and his co-defendant, Cedric Pipes, were convicted of first-degree

murder following a jury trial in the Wayne County Circuit Court.  This Court recites

verbatim the relevant facts regarding petitioner's conviction from the Michigan Supreme

Court's opinion affirming his conviction, which are presumed correct on habeas review.

*See Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006):

On March 23, 2002, three-year-old Destiney Thomas sustained a fatal gunshot

wound as the result of a drive-by shooting. The prosecution charged defendants Cedric Pipes and Julian Key with first-degree premeditated murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony in connection with the shooting.

Pursuant to MCR 6.121(C), defendants moved for separate trials or separate juries, arguing that their defenses were "mutually exclusive." In support of the motion, defendant Key made an offer of proof that he would testify that he was not present and had no involvement in the shooting. Meanwhile, defendant Pipes made an offer of proof that he would testify that he was present when defendant Key shot at the house, but that Pipes had no involvement in the shooting. Neither defendant argued for severance based on the possibility of a *Bruton* error.

The trial court denied defendants' motion, determining that defendants could not make the requisite showing of prejudice necessary to sustain the motion. The trial court concluded that although defendants' proposed defenses involved blame shifting, they were not "mutually exclusive." Furthermore, the trial court specifically noted that, given defendants' offer of proof, no *Bruton* problem was present in this case. If the codefendant testifies at trial, then his statements to the police are admissible because the maker of the statements is subject to cross-examination. The trial court relied on the offers of proof presented by both defendants where each unequivocally stated his intention to testify at trial. The trial court noted multiple times its determination that no *Bruton* problem was present because both defendants planned to testify.

The prosecution's theory at trial was that the victim died in a drive-by shooting that resulted from a territorial dispute between defendants and rival drug dealers. According to the prosecution, rival drug dealers shot defendant Key's girlfriend's automobile, a green Jeep Cherokee, in response to an argument with defendants. Defendant Key frequently used the green Jeep and had it in his possession when it was shot. The drive-by shooting that killed the victim was an act of retaliation for the damage done to the automobile.

The trial court admitted into evidence multiple statements given by both defendants to the police. Both defendants' admissions recounted the argument with the rival drug dealers and discussions regarding retaliation for the shooting of the Jeep. Initially, each defendant shifted all blame for the shooting to his codefendant. Subsequently, each codefendant made statements that inculpated himself as well as his codefendant. Defendant Key conceded that both he and defendant Pipes committed the drive-by shooting. Key

admitted that he and Pipes obtained a car from a drug customer, which they used in the drive-by shooting, while others followed in the Jeep as backup. Likewise, Pipes admitted that he rented a car for Key to use in the shooting and admitted following behind Key in the Jeep in order to "watch his [codefendant's] back" during the shooting.

After the prosecution presented its case-in-chief, the trial court inquired of defendants regarding how they planned to proceed. At that point, counsel for each defendant equivocated regarding whether his client would testify. The trial court acknowledged that defendants were free to not testify, but reiterated that its denial of their motion for separate trials and juries was specifically premised on the unequivocal offers of proof that defendants would testify at trial.

Ultimately, however, defendants exercised their Fifth Amendment right and did not testify at trial. However, defendants never sought a mistrial when the *Bruton* error became apparent. The jury convicted both defendants of first-degree premeditated murder, but acquitted defendants on all other charges.

*People v. Pipes,* 475 Mich. 267, 270-73; 715 N.W. 2d 290 (2006)(Cavanagh and Kelly, JJ., dissenting)(internal footnotes omitted).

The Michigan Court of Appeals reversed petitioner's and his co-defendant's convictions, on the ground that the trial court denied defendants a fair trial by denying their motion for separate trials or separate juries, thus causing a *Bruton* error when the defendants chose not to testify. *People v. Pipes,* No. 2005 WL 1281882 (Mich.Ct.App. May 31, 2005)(Meter, J. dissenting).

The Michigan Supreme Court reversed the Michigan Court of Appeals' decision and re-instated the convictions. *People v. Pipes,* 475 Mich. at 276-84.

Petitioner now seeks the issuance of a writ of habeas corpus on the following ground:

I. Was Petitioner denied his state and federal constitutional right to due process to a fair trial when the trial court denied Petitioner's motion for separate trials or separate juries?

Respondent has filed an answer in opposition to the petition for writ of habeas corpus, which is construed as a motion to dismiss on the basis that the claim is barred by procedural default. *See Alvarez v. Straub*, 64 F. Supp. 2d 686, 689 (E.D. Mich. 1999).

## II. Discussion

Respondent contends that petitioner's claim is procedurally defaulted, because neither he nor his co-defendant objected to the *Bruton* error at trial and as a result, the Michigan Supreme Court reviewed the admission of petitioner's and co-defendant's statements at their joint trial for plain error only.

In the present case, the Michigan Supreme Court agreed with the Michigan Court of Appeals that a *Bruton* error had occurred at trial. However, the Michigan Supreme Court concluded that petitioner's claim was subject to plain error review because neither he nor his co-defendant objected to the admission of the statements on Bruton grounds. The Michigan Supreme Court further noted that both petitioner and his co-defendant expressly approved the limiting instructions given to the jury upon the introduction of each statement. The Michigan Supreme Court further indicated that petitioner and his co-defendant were aware that the trial court predicated its decision to deny their pre-trial motion for separate trials on the defendants' representations that they were going to testify at trial. When petitioner and his co-defendant both exercised their right to not testify, thus causing the *Bruton* error with regard to the other defendant, neither petitioner

nor his co-defendant objected or moved for a mistrial on the basis of any *Bruton* error, but allowed the trial to proceed to a verdict without ever arguing that his confrontation rights had been violated. The Michigan Supreme Court held that by failing to object or move for a mistrial on *Bruton* grounds, defendants failed to properly preserve the *Bruton* error for appeal. *Pipes,* 475 Mich. at 277-78. Because the *Bruton* error had not been properly preserved, the Michigan Supreme Court concluded that the Michigan Court of Appeals should have reviewed the unpreserved, constitutional error for "plain error that affected substantial rights" under [*People v.]* v. *Carines*. *Id.* at 278, 284.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence, which

would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998).

The Michigan Supreme Court clearly indicated that by failing to object or move for a mistrial on *Bruton* grounds, petitioner failed to properly preserve the *Bruton* error for appeal. The fact that the Michigan Supreme Court engaged in plain error review of petitioner's *Bruton* claim does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000). The fact that petitioner is raising a federal constitutional claim does not alter this Court's analysis. Indeed, the Sixth Circuit has recently held that even a state court's plain error review of federal constitutional claims, as opposed to mere state law claims, is sufficient to constitute a procedural default of a such claims. *See Girts v. Yanai,* 501 F. 3d 743, 755 (6th Cir. 2007). Moreover, the Sixth Circuit has held that *Bruton* errors can be procedurally defaulted if the petitioner fails to properly preserve the claim in the state courts. *See Mikesell v. Conley,* 51 Fed. Appx. 496, 505-06 (6th Cir. 2002). Thus, this Court should view the Michigan Supreme Court's review of petitioner's *Bruton* claim for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). Petitioner's claim is procedurally defaulted. [1]

In the present case, petitioner has failed to allege any reasons to excuse his

---

[1] This Court notes that the Sixth Circuit has also applied the plain error standard to review unpreserved *Bruton* claims on direct review of federal criminal court convictions. *See e.g. Gibson v. United States,* 271 F. 3d 247, 254-55 (6th Cir. 2001).

procedural default.  Because petitioner has not alleged or demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his claim. *Smith*, 477 U.S. at 533; *See also Isabell v. Curtis,* 36 Fed. Appx. 785, 788 (6th Cir. 2002); *Payne v. Smith,* 207 F. Supp. 2d 627, 638-39 (E.D. Mich. 2002).

Assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claim would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Terry v. Bock,* 208 F. Supp. 2d 780, 793 (E.D. Mich. 2002).

Where a co-defendant's incriminating confession is admitted at a joint trial and the co-defendant does not take the stand, a defendant is denied the constitutional right of confrontation, even if the jury is instructed to consider the confession only against the co-defendant. *Bruton v. United States*, 391 U.S. 123, 127-28 (1968).  This rule has been extended even to cases in which the defendant's own interlocking confession was admitted against him at trial. *Cruz v. New York*, 481 U.S. 186, 193 (1987).  However, a defendant's own confession may be considered on review of a conviction in assessing whether any confrontation clause violation was harmless error. *Id.* at 193-94; *See also Harrington v. California*, 395 U.S. 250 (1969).

In determining whether a *Bruton* violation is harmless, a reviewing court must decide "'whether the 'minds of an average jury'" would have found the State's case against a defendant "'significantly less persuasive'" had the incriminating portion of the

co-defendant's statement been excluded. *Stanford v. Parker,* 266 F. 3d 442, 456 (6th Cir.

2001)(*citing Hodges v. Rose*, 570 F. 2d 643, (6th Cir. 1978)(*quoting Schneble v. Florida*,

405 U.S. 427, 432 (1972)). "An erroneous admission of a non-testifying co-defendant's

confession can constitute harmless error where the defendant claiming a *Bruton* violation

confessed to full participation in the crimes." *Stanford,* 266 F. 3d at 456. In determining

whether a *Bruton* violation was harmless, the reviewing court must therefore consider the

nature and content of the defendant's own statement, in particular, to see whether it

satisfactorily explains his part in the crime without reference to the co-defendant's

statements. *Samuels v. Mann*, 13 F. 3d 522, 526-27 (2nd Cir. 1993). Also relevant is the

extent to which the defendant's statement is corroborated or contradicted by other

objective evidence. *Id.* at 527.

In the present case, any error in the admission of the co-defendant's statement was

harmless, in light of the fact that petitioner confessed to a full participation in the murder.

*Stanford,* 266 F. 3d at 542. As the Michigan Supreme Court noted:

> Each defendant individually admitted the territorial dispute with rival drug
> dealers, and each defendant's statements exposed the motive behind the
> homicidal shooting-retaliation for shooting the green Jeep Cherokee. In his
> second statement to the police, defendant Key explicitly admitted being the
> triggerman in the drive-by shooting and using an AK-47 rifle

> *Pipes,* 475 Mich. at 281.

Moreover, as the Michigan Supreme Court further noted, *See Pipes,* 475 Mich. at

281-3, other evidence corroborated petitioner's and the co-defendant's confessions. One

witness testified that a green Jeep Cherokee pulled in front of the house and someone

8

opened fire from the passenger side of the vehicle. The witness testified that the Jeep was similar to the vehicle petitioner was known to drive. Another witness, who was walking toward the victim's house, testified that he was approximately one block away from the house when he heard gunfire. After the gunfire stopped, the witness observed a green Jeep Cherokee headed toward him at a "kind of fast" pace. From a distance of 10 to 12 feet away, the witness positively identified both petitioner and the co-defendant in the green Jeep Cherokee, driving away from the scene of the crime. This witness also testified that petitioner was known to drive a green Jeep Cherokee. Petitioner's girlfriend testified that she owned a green Jeep Cherokee and that she allowed petitioner to drive her vehicle "almost daily." At the time of the shooting, the girlfriend was out of town and returned to find her vehicle missing. When petitioner's girlfriend retrieved her automobile from the police two weeks later, one window was "shot out" and the car had two or three bullet holes in it. Petitioner's girlfriend testified that her Jeep was parked at her residence when she left town, and that petitioner did not have permission to drive her vehicle on the weekend that the shooting occurred. Petitioner's girlfriend also testified that a second set of car keys was missing from her residence. Although an inconclusive amount of gunshot residue was found in the Jeep, shell casings and bullet fragments recovered from the crime scene were consistent with an AK-47 rifle. Information provided to 911 operators implicated a green Jeep Cherokee in the shooting with a partial license plate number of 341. Two police officers testified that the "numbers were inverted," because the license plate sequence on the green Jeep Cherokee owned by

petitioner's girlfriend had a partial plate number of 431.

Petitioner's own statement, as well as this additional evidence, provided compelling evidence that petitioner participated in the murder of the victim. Accordingly, the co-defendant's statement was merely cumulative to the other evidence and its admission at trial was harmless. *See Jackson v. Renico,* 320 F. Supp. 2d 597, 606 (E.D. Mich. 2004); *See also Miller v. Miller*, 784 F. Supp. 390, 398 (E.D. Mich. 1992)(error in admitting co-defendant's statement was harmless, where portions of the co-defendant's statement was either substantiated by petitioner's own statements or other evidence submitted at trial). At a minimum, this Court cannot state that "the 'minds of an average jury' " would have found the prosecution's case against petitioner " 'significantly less persuasive'" had the incriminating portion of the co-defendant's statement been excluded. *Stanford,* 266 F. 3d at 456. Therefore, petitioner has failed to satisfy the prejudice prong necessary to overcome the default of his *Bruton* claim. *Mikesell,* 51 Fed. Appx. at 506.

Finally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider the *Bruton* claim as grounds for a writ of habeas corpus in spite of the procedural default. *See Payne,* 207 F. Supp. 2d at 639. Petitioner's claim is procedurally defaulted.

### III. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional

right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* A district court has the power to deny a certificate of appealability *sua sponte. Allen v. Yukins,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. The Court will also deny petitioner leave to appeal *in forma*

*pauperis,* because the appeal would be frivolous. *Allen,* 156 F. Supp. 2d at 798.

## IV. <u>ORDER</u>

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas

corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** That a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner will be **DENIED** leave to appeal *in*

*forma pauperis.*

s/John Corbett O'Meara
United States District Judge

Date:  December 6, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record
on this date, December 6, 2007, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager